HOLLOWAY, Circuit Judge,
concurring and dissenting:
I
I concur in Part I of the majority opinion and its conclusion that we cannot say the trial judge abused his discretion in admitting the evidence of Defendant’s pri- or conviction. I also join in Part III of the opinion, reversing the Defendant’s conviction on Count I and remanding for the entry of a judgment of acquittal on that Count. I also concur in the opinion’s rulings in Part II-B that the district court erred in admitting the conclusions of Dr. Ornelas, the prejudicial statements of Ms. Baum and Ms. Carlson, and the physical abuse-related opinion of Ms. Carlson. However, I would also hold that there was error in the admission of Dr. • Junkins’s testimony that sexual abuse “would” explain, and was a “unifying diagnosis” of, D.J.’s symptoms and history. As explained below, I believe that the prejudicial effect of this testimony was too great to have been cured by Dr. Junkins’s later, more qualified statements that sexual abuse “could” explain D.J.’s problems.
Therefore I cannot join Part II-B(l) in holding there was no error in the admission of the testimony of Dr. Junkins. Nevertheless, with or without consideration of the error in the admission of such testimony of Dr. Junkins, I am unable to concur in Part II-C of the opinion holding that errors in the admission of doctors’ and counselors’ testimony were harmless and respectfully dissent from that holding. Accordingly, I would reverse the convictions on Counts II through VII and remand for further proceedings on those Counts.
II
A
I turn first to my disagreement with the harmless error conclusion of the majority opinion. As the opinion notes, we are instructed by Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), on the strict standard that applies for a conviction to be upheld despite error. The Court’s test that controls is clearly said:
But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if *1286 one is left in grave doubt, the conviction cannot stand.
328 U.S. at 765. See also United States v. McVeigh, 153 F.3d 1166, 1203 (10th Cir.1998), cert. denied, — U.S. -, 119 S.Ct. 1148, 143 L.Ed.2d 215 (1999). And, as the majority further notes, the government ordinarily has the burden of proving that a non-constitutional error was harmless. United States v. Rivera, 900 F.2d 1462, 1469 n. 4 (10th Cir.1990) (eh banc). In the instant case, however, the government in briefing took an all-or-nothing stand that there were no errors and made no alternative claim or showing that even if particular rulings were in error, they were nevertheless harmless. Even at argument, counsel for the government conceded only that opinion testimony had been offered and admitted at trial, contrary to her contention, which the trial judge accepted, that the doctors and therapists would testify only as fact witnesses. Thus, harmless error has been argued only regarding the violation of Fed.R.Crim.P. 16, not as to the content of the opinions expressed by the expert witnesses.
Against this backdrop I will explain my reasons for being unable to join the majority’s harmless error conclusion. The prejudicial damage to the Defendant by the erroneous admission of evidence is treated below.
1. Dr. Renee Ornelas
I concur in the majority’s analysis that there was error in admission of the testimony of Dr. Ornelas. I add my observations to explain why I reach a different conclusion on harmless error than the majority. I am particularly concerned about Dr. Ornelas’s statement of her unqualified opinion of sexual abuse immediately in response to the early questions concerning D.J. The prosecutor’s questioning of Dr. Ornelas began with general information on her position and procedures. Then the first specific question asked about this case was whether she had examined D.J., to which Dr. Ornelas responded that she had. This colloquy immediately followed:
Q. And what were your findings based upon her medical history?
A. Was that she had a normal genital exam and that — my final conclusion was that she had been sexually abused.
Ill R. at 317-18 (emphasis added).
I join the majority opinion’s analysis and conclusions that there was error in the admission of Dr. Ornelas’s testimony. As persuasively explained by the majority opinion (maj. op. at 1277-79), Dr. Ornelas was erroneously permitted to testify it was her unconditional opinion that both D.J. and J.J. had been sexually abused. Ill R. at 317-18; 323. As the majority opinion points out, maj. op. at 1277-78, if those conclusions were based on the girls’ symptoms, those Fed.R.Evid. 702 opinions were admitted without the required special gate keeping determination on reliability of an expert’s opinion. Kumho Tire Co. v. Carmichael, — U.S. -, -, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999). Or, if Dr. Ornelas’s opinion was largely based on crediting the accounts given by D.J. and J.J., Dr. Ornelas was actually vouching for their truthfulness and invading the credibility province of the jury. See United States v. Azure, 801 F.2d 336, 339-40 (8th Cir.1986); United States v. Samara, 643 F.2d 701, 705 (10th Cir.1981), and other authorities cited by the majority. Maj. op. at 1279. Either premise for the admission of Dr. Ornelas’s testimony was wrong, and admitting that testimony was error, as the majority opinion holds.
2. Joelle Baum and Kristine Lee Carlson
I agree with the majority opinion’s holding that there was error in the admission of portions of the testimony of the counselors, Ms. Baum and Ms. Carlson. Ms. Carlson’s opinion that D.J.’s symptoms were more consistent with those of children who have been sexually abused than with those of children who had witnessed physical abuse of their mother was errone *1287 ously admitted. No sufficient foundation had been laid for such statements, and no reliability inquiry was made. Kumho Tire, — U.S. at -, 119 S.Ct. at 1175-76. Maj. op. at 1281. I agree and also join the holding that the counselors were erroneously permitted to give testimony that assumed the fact of abuse, which was for the jury to determine. Maj. op. at 1281. I also agree that there was error in the admission of the counselors’ statements that were “manifestly outside the counselors’ direct knowledge,” id. at 1281; those statements invaded the province of the jury and were inadmissible under Fed.R.Evid. 403. Id. at 1281-82.
3. Dr. Edward P. Junkins, Jr.
In Dr. Junkins’s testimony, he first described the various symptoms for which he and others at the Crownpoint Healthcare Facility had seen D.J. in the past, before they were aware of any allegations of sexual abuse. These included several visits from April 7 through April 10, 1997. He was then asked if he had seen D.J. after April 10, 1997, and he said that he had. Then the following exchange occurred:
(17) And what, if anything, did she present to you that [sic] the point?
A: Yeah, it was at this point that I was asked to see her personally by her mother. Her mother caught me during my office time and said that there was something that she needed to tell me and that she had brought [D.J.] as well as her sister, [J.J.], and it was this visit on April the 11th that I became very concerned, and at the same time it became clear to me as a pediatrician what had been going on and what’s the cause of all these problems.
II R. at 155 (emphasis added). Dr. Jun-kins went on to read from the form that he fills out in suspected cases of abuse, at the bottom of which, he testified, he had added, “This patient presented finally when she had been seen several times for abdominal pain, urinary tract infections, neu-rologic symptoms, anuresis.” This question and answer followed:
Q. What did you mean by that?
A. I meant to make it clear in the chart that I thought that this, the history offered, of suspected abuse by her, would help me explain a lot of the symptoms. It was a unifying diagnosis, and — and evaluated, I think, as being clear by all of the symptoms that she had and the history that was offered. That’s why I wrote that finally she had — she had something lohich I felt helped to bring all of these problems together.
Id. at 161-62 (emphasis added).
The majority cites later testimony by Dr. Junkins which was qualified — that is, testimony that sexual abuse could explain the other symptoms D.J. had reported — as “the essence of Dr. Junkins’ opinion, and what the jury was left with by way of information.” Maj. op. at 1276. I am not persuaded that the later testimony cured the error in the earlier testimony which clearly stated that suspected abuse “would” help explain many symptoms. There was no emphasis or clarification making it plain to the jury that Dr. Jun-kins was really saying that abuse “could” explain the symptoms. Therefore I believe this error had substantial influence or leaves me in “grave doubt” whether the jury understood that Dr. Junkins’s diagnosis was that D.J. had in fact been sexually abused. I believe that admission of this testimony was error for the same reasons explained by the majority in its discussion of Dr. Ornelas’s testimony. Maj. op. at 1277-79 (improper vouching for the testimony of D.J. and J.J. or error due to the lack of a reliability determination as required by Kumho Tire).
B
Because of the combined impact of the evidence outlined above, I cannot agree with the harmless error conclusion of the majority. The several prejudicial errors at trial convince me that I cannot say with fair assurance, as Kotteakos and our precedent require, that after pondering all that *1288 happened, I believe the judgment was not substantially swayed by the errors that occurred. And in any event, my view of their influence leaves me in grave doubt so that I cannot agree to let the convictions on Counts II through VII stand. Kottea-kos, 328 U.S. at 765.
As the majority opinion notes, the Defendant took the stand in his own defense and categorically denied the abuse of either D.J. or J.J. charged against him. IV R. 569, 571, 573-74, 575-76, 579-80. The opinion notes further that there were no eyewitnesses to the alleged misdeeds. Maj. op. at 1282. Furthermore, although repeated physical abuse of both D.J. and J.J. was alleged, there was no physical evidence of abuse noted, id., despite physical examinations of both girls by two pediatricians called by the government, Dr. Junkins and Dr. Ornelas. II R. at 142; III R. 313. Dr. Junkins did comment from his April 11, 1997, examination that D.J. had an abnormality, “a little small irregularity at the base of the hymen.” He just used his eyes with no means of magnification. II R. 163. Dr. Junkins said that unless a child is examined within 72 hours of an act, the findings are overwhelmingly normal. Id. at 166.
Dr. Ornelas testified that D.J. had “a normal genital exam,” III R. 317, but added in her opening remarks that “my final conclusion was that she had been sexually abused.” Id. at 317-18. She said “there weren’t any scars or tears or lacerations or defects in the hymen, those kinds of things,” id. at 318, but she made her abuse diagnosis because of the way she said the contact occurred, by “labial coitus.” Id. at 322. Dr. Ornelas said that J.J. “also had a normal examination” but said she concluded that J.J. was also sexually abused. Id. at 323. This was based on J.J.’s “history that we had from her sister” and from other information. Id. Doubt about what was related by J.J. is raised by the testimony of Dr. Ornelas explaining that children want to be polite saying “yes” or “no” to everything, but relating this information about J.J.’s interview: “And so what [J.J.] said in this case was that she had just been playing, that she wasn’t serious and that, in essence, nothing happened, and she didn’t want to talk about it.” Id. at 324 (emphasis added). Dr. Ornelas said this did not change her diagnosis as to J.J.
As to D.J., Dr. Ornelas testified that from her examination of the hymen, the vagina, the clitoris, the labia minora and labia majora, and the posterior four-chette — she found all were within normal limits with no tags, no tears, no bruising and no discharge. Ill R. at 332. J.J.’s examination by Dr. Ornelas also was completely, in every regard, within normal limits. Id. at 333.
Thus there were some doubts raised in this record about the reported sexual abuse of D.J. and J.J., considering the record as a whole. Their own testimony, if truthful and accurate, did present a shocking view of Defendant Charley’s conduct and laid a strong basis for the prosecution’s case. Nevertheless, our question is “not whether, omitting the inadmissible statements, the record contains sufficient evidence for a jury to convict the defendant,” United States v. Tome, 61 F.3d 1446, 1455 (10th Cir.1995), as the majority opinion notes. Even where the government’s case against a defendant in a child sexual abuse case was “very strong,” the Eighth Circuit held such sufficiency of the evidence alone was not enough to support a finding of harmless error. United States v. Azure, 801 F.2d at 341. We must determine whether in light of the whole record, the erroneously admitted evidence substantially influenced the outcome of Defendant’s trial, or whether we are left in “grave doubt” as to whether it had such an effect. Tome, 61 F.3d at 1455. If the answer to either inquiry is yes, the error requires reversal for a new trial. Id.
The review of the record made carefully by the majority opinion and the further references to the evidence I have presented above compel me to respectfully dissent as to the harmless error holding. Because of the lack of physical evidence, and of other witnesses to the alleged conduct, this case turned almost entirely on the credibil *1289 ity of D.J. and J.J. By the time the two victims took the stand, their credibility had been improperly enhanced by the testimony of four witnesses who, although not formally proffered as experts, likely were very impressive to the jurors because of their professional standing. Whether the improperly admitted opinion evidence is considered as vouching for D.J.’s and J.J.’s testimony, or as lacking the proper foundation of a reliability determination by the judge, is not of controlling importance, once we reach the stage of determining whether the errors were harmless. Either way the opinions are analyzed, the result was unfairly prejudicial to Defendant.
Although I cannot say that Mr. Charley likely would have been acquitted if not for the erroneously admitted testimony, neither can I say that the errors did not have substantial influence on the verdicts. Instead, I am in grave doubt as to the latter question, and accordingly I cannot hold that the errors were harmless. Therefore, I respectfully dissent from the affirmance of the convictions on Counts II through VII. I would reverse those convictions and remand for a new trial free of the serious errors in the admission of testimony.