**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James David FREEMAN, Defendant-Appellant.**

**No. 86–1892.**

United States Court of Appeals, Tenth Circuit.

April 21, 1987.

---

.

Julie Robinson Trice, Asst. U.S. Atty., Kansas City, Kan., (Benjamin L. Burgess, Jr., U.S. Atty., on the brief), for plaintiff-appellee.

Paul M. Dent, Kansas City, Kan., for defendant-appellant.

Before BARRETT, McWILLIAMS and BALDOCK, Circuit Judges.

BARRETT, Circuit Judge.

James David Freeman (Freeman) appeals from a jury verdict of guilty of delivery and possession of counterfeit federal reserve notes, in violation of 18 U.S.C. §§ 472 and 473. The relevant facts are undisputed.

During December 27–28, 1985, Freeman and his co-defendants, Joyce Martin and Jolynn Grady, were under surveillance for suspected distribution of counterfeit federal reserve notes. The surveillance was undertaken based on information received from a confidential informant. Freeman was arrested on December 28, 1985, in Topeka, Kansas. Martin and Grady were

arrested that same day in Lawrence, Kansas.

Following his arrest, Freeman was transported to Kansas City, Missouri, by several United States Secret Service agents, where, after being fully advised of his *Miranda* rights, he was interviewed. During the interview Freeman related to the agents that he had purchased $50,000 in counterfeit money for $12,500, and that he, Martin and Grady had passed counterfeit bills in Illinois, Iowa, and Nebraska on the weekend of December 19, 1985. Freeman also stated that he had given Grady twenty-five counterfeit $100 federal reserve notes early on December 28th in Lawrence, Kansas.

During the interview, Freeman also signed a consent form to permit agents to search his automobile. The search of Freeman's car produced $48,500 in counterfeit $100 federal reserve notes. Thereafter, Freeman was released and allowed to return to his home in Minnesota.

On January 22, 1986, an indictment was returned charging Freeman, Martin and Grady with possession and distribution of counterfeit $100 federal reserve notes. Prior to trial,[1] Freeman filed several motions including a motion to require the government to identify its confidential informant. Freeman also filed a motion to suppress the statements he had made to the Secret Service agents at the time of his interview and to suppress the fruits of the search of his car. Following a hearing, the district court denied Freeman's motions.

At trial, Special Agent McNerman of the Secret Service, the case agent on the investigation leading to Freeman's arrest, testified, *inter alia*, that: he had been told by a Kansas City police officer that a reliable source had information regarding Martin and Grady passing counterfeit money; he met with the informant who related that Martin and Grady had been passing counterfeit bills in other states; officers in other states verified that counterfeit $100 bills had been passed in their states on the weekend related by the informant. Agent McNerman also testified that the informant related that Martin and Grady planned to

meet with an unknown white male from another state on the weekend of December 27, 1985, for the purpose of passing counterfeit money. A surveillance of Martin and Grady established their meeting with Freeman. They were subsequently arrested for possession and distribution of counterfeit federal reserve notes.

The government also presented evidence relating to Freeman's arrest, an interview during which Freeman acknowledged purchasing $50,000 of counterfeit bills for $12,500, and the search of his automobile which produced $48,500 in counterfeit $100 bills. Freeman did not present any evidence. After deliberating for approximately one hour, the jury returned its verdict of guilty.

Following the trial, Freeman filed a motion for a new trial contending: (1) the verdict was contrary to the law and weight of evidence presented at trial; (2) the court erred in denying his motion to suppress his statements to the Secret Service agents and the fruits of the search of his automobile, inasmuch as they were the direct results of an unlawful arrest; and (3) the court erred in permitting hearsay concerning statements of a confidential informant. The court denied Freeman's motions.

On appeal, Freeman contends that the court erred in: (1) overruling his motion to suppress his statements and the fruits of the search of his automobile; (2) overruling his motion to compel the government to identify its confidential informant; (3) admitting in evidence hearsay testimony concerning statements of the confidential informant; and (4) overruling his motion for a continuance on the day of trial so that he could retain an attorney other than appointed counsel.

### I.

Freeman contends that the court erred in overruling his motion to suppress his statements to the Secret Service agents and the fruits of the search of his vehicle because there was no probable cause for his warrantless arrest, and the statements and

---

1. Freeman was tried individually.

consent to search made by him following his arrest were not voluntary.

In reviewing the denial of a motion to suppress, the trial court's findings of fact must be accepted unless clearly erroneous. *United States v. Ellison,* 791 F.2d 821 (10th Cir.1986); *United States v. Espinosa,* 771 F.2d 1382 (10th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). Further, we must consider the evidence presented at trial in a light most favorable to the government. *United States v. Alonso,* 790 F.2d 1489 (10th Cir. 1986).

The district court denied Freeman's motion to suppress prior to trial and the court also denied Freeman's motion for a new trial in which he alleged that the court had erroneously denied his pretrial motion to suppress. In denying Freeman's motion for a new trial, the court found:

> The defendant also contends that the court erred in denying the defendant's pre-trial motion to suppress the defendant's statements to secret service agents and the fruits of the search of the defendant's vehicle. The defendant contends that they were direct results of an unlawful arrest which was not supported by probable cause. The court finds that the confidential informant and the facts surrounding the informant's testimony, as well as the actions of the defendant, did establish probable cause sufficient for the lawful arrest of the defendant. The court further finds that defendant's statements to Government officials were freely, knowingly and voluntarily given after the defendant had been fully advised of his rights. The court therefore finds that such statements are not fruits of an invalid, unlawful arrest. The court further finds that the defendant voluntarily consented to the search of his vehicle. Probable cause for the defendant's arrest and search of the car was clearly established by the informant's information and the two-day surveillance of the defendant and his two accomplices.
>
> Finally, the defendant claims that the court erred in permitting hearsay testimony concerning statements of a confidential informant. The court must agree with the Government that the confidential informant was a tipster, not a participant nor a spectator to the crimes, that the informant's identity needn't be disclosed, and that the informant's statements were admissible.

R., Vol. I, Tab 65, pp. 2–3.

Considering the evidence presented at trial in a light most favorable to the government, we hold that the trial court's findings of fact relative to Freeman's motion to suppress as set forth in his motion for a new trial are not clearly erroneous. We hold that the court properly found that there was probable cause for Freeman's warrantless arrest and that his statements and consent to the search of his automobile were voluntarily given.

Probable cause to arrest is measured against an objective standard. *United States v. Salinas-Calderon,* 728 F.2d 1298 (10th Cir.1984). Probable cause for arrest exists where the facts and circumstances within the arresting officers' knowledge and about which they have reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed by the person to be arrested. *United States v. Alonso, supra,* at pp. 1495–96.

At the time of Freeman's arrest, the arresting officers had been notified by a reliable informant that Martin and Grady planned to meet an "unknown white male" (Freeman) from out of town for the purpose of distributing counterfeit bills and that the counterfeit money was to be passed by Martin and Grady who would then meet the male later in a different town. Martin and Grady had been surveilled meeting with Freeman when he was driving a car with Minnesota plates registered in his name and the three had been surveilled driving to Lawrence, Kansas, in two separate cars. In Lawrence, the three had been surveilled as they met in a parking lot, after which Grady had been observed entering and exiting Freeman's car, and thereafter proceeding to the Lawrence

business district where she was arrested for passing counterfeit bills. The information provided by the informant, all of which was corroborated by other law enforcement officers and the actions of Martin, Grady, and Freeman, provided adequate probable cause to arrest Freeman.

■ There is nothing in the record indicating that Freeman's consent to the search of his vehicle and statements to the arresting officers were anything other than voluntary. The issue of whether a defendant has voluntarily consented to a search is a question of fact to be determined from the totality of the circumstances. *United States v. Obregon*, 748 F.2d 1371 (10th Cir.1984). Upon review, we must view the evidence in the light most favorable to the district court's determination. *Id.* When, as here, the record is void of *any* evidence of coercion, we cannot set aside a district court's finding of voluntariness. Similarly, the voluntariness of a defendant's statements to arresting officers must be assessed from the totality of the circumstances and the evidence must be viewed in the light most favorable to the district court's determination. The trial court's finding of voluntariness is reinforced when, as here, Freeman's statements contained facts known only to Freeman, such as how he had acquired the counterfeit bills. Such admissions could not have been the product of pointed, leading or suggestive questioning by agents since the agents did not know the details. *See, Gilreath v. Mitchell*, 705 F.2d 109 (4th Cir.1983).

## II.

■ Freeman contends that the court erred in overruling his motion to compel the government to identify its confidential informant. Freeman argues, citing *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), that when the disclosure of an informant is relevant and helpful to the defense of the accused, the privilege of nondisclosure must give way and the trial court may require disclosure.

Under *Roviaro*, courts must apply a balancing test in determining whether the identity of a confidential informant should be disclosed. *Roviaro*, 353 U.S. at 59, 77 S.Ct. at 627. A court must balance the defendant's need for disclosure against the "government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Id.*

We recently considered the conditions under which a defendant may learn the identity and whereabouts of an informer in *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir.1986), in which we held:

A defendant may obtain the identity and whereabouts of an informer if his testimony might be relevant to the defendant's case and justice would be best served by disclosure. *United States v. Sherman*, 576 F.2d 292 (10th Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978). Disclosure of an informant is not required, however, where the information sought from the informer would be merely cumulative, *United States v. Pelley*, 572 F.2d 264 (10th Cir. 1978), or where the informant did not participate in the transaction in question. *Garcia v. United States*, 373 F.2d 806 (10th Cir.1967).

Applying these standards, we hold that the district court did not err in denying Reardon's pretrial motion to have the Government release all of its information on Speece. Unlike *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), cited to and relied upon by Reardon, this is not a case in which an informant, unknown to the defendant, actively participated in the transaction which generated the charge.

Our holding in *Reardon* is equally applicable herein. It is uncontested that the Government's informant in this case did not participate in the transaction leading to Freeman's arrest. Freeman has failed to state why he wanted to question the informant and he has also failed to establish how the informant's "testimony might be relevant to the defendant's case and [how] justice would be best served by disclosure." Furthermore, the testimony of the informant would have been cumulative at best

when, as here, the actions of Martin, Grady and Freeman completely verified the information related by the informant.

## III.

Freeman contends that the court erred in admitting in evidence hearsay testimony concerning statements made by the confidential informant. Freeman argues that the government was allowed to introduce hearsay evidence over his objection during its direct examination of Agent McNerman. Freeman contends that information related to Agent McNerman by the Kansas City Police Department and by the confidential informant, testified to by Agent McNerman at trial, constituted "hearsay evidence since they were made by a person who was not present at the trial and they were offered to prove the truth of the matter stated." (Brief of Appellant at p. 11.) Freeman also contends that the introduction of this evidence was not merely cumulative but rather was prejudicial and must have affected the jury's verdict.

Under Fed.R.Evid.Rule 801(c), 28 U.S.C.A., hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. However, the "hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements." *Dutton v. Evans*, 400 U.S. 74, 88, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970). Furthermore, out of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken. In *United States v. Love*, 767 F.2d 1052, 1063–64 (4th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 848, 88 L.Ed.2d 890, the court held:

The appellants argue that DEA Agent Shumand's testimony concerning information he received from a fellow DEA agent in Florida about proposed landing sites in South Carolina is inadmissible hearsay. We find this argument unpersuasive.

Fed.R.Evid. 801(c) defines an out of court statement as hearsay if it is "offered in evidence to prove the truth of the matter asserted." However, an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken. *United States v. Scott*, 678 F.2d 606, 612 (5th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 285 (1982); *see also United States v. Hunt*, 749 F.2d 1078, 1084 (4th Cir.1984), *cert. denied* [472 U.S. 1018, 105 S.Ct. 3479, 87 L.Ed.2d 614], 53 U.S.L.W. 3880 (U.S. June 18, 1985) (No. 84–1481). In this case, Shumand's testimony was offered not for its truth but only to explain why the officers and agents made the preparations that they did in anticipation of the appellants' arrest. As such, it was not inadmissible hearsay. *See United States v. Mancillas*, 580 F.2d 1301 (7th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.[2d] 351 (1978) ("Whether or not the ... statement was true, the fact that it was made would surely explain the flurry of investigative activity in three states the jury was soon to hear about. For this purpose, outlining the background of the investigation with the evidence not being offered to prove its truth, it could be said not to be nonadmissible as hearsay." (citations omitted)).

Agent McNerman's testimony relative to discussions with the Kansas City Police Department and the confidential informant was not offered to prove the truth of the matter asserted; rather, it was admitted to explain preparations and steps in the Government's investigation of Freeman.

Of course, out-of-court statements by informants offered to explain the background of an investigation, like all evidence, must be evaluated under the criteria in Fed.R.Evid.Rules 401 and 403 for relevance and to prevent confusion or prejudice on the part of the jury. *See, United States v. Mancillas*, 580 F.2d 1301, 1309–10 (7th Cir.1978). After reviewing the record in this case, however, we conclude that the informant's statements were neither confusing nor prejudicial. The informant's

statements explain why it was that agents had Grady and Martin under surveillance on the day they passed counterfeit money to Freeman. Indeed, the only reference to Freeman in the informant's statements was that Grady and Martin were going to meet "a white male from out-of-town." Under these circumstances, we hold that the court did not err in allowing Agent McNerman to testify relative to his conversations with the confidential informant and Kansas City Police Department.

### IV.

Freeman contends that the court erred in overruling his motion for a continuance on the day of the trial so that he could retain an attorney other than appointed counsel. Freeman filed a motion for a continuance on the morning of trial. Freeman requested that the continuance be granted so that he could retain counsel and to allow his retained counsel an opportunity to prepare for trial. Freeman explained to the court that he had only recently been able to accumulate money to hire counsel and that was why his request was made at such a late date.

The district court denied the motion for a continuance after noting that there was a "time problem" with the agent involved in the case and that "[w]e have a serious problem with speedy trial." (R., Third Supplemental Volume at p. 5.)

Freeman argues that a defendant in a criminal prosecution is granted the assistance of counsel by the Sixth Amendment and "that he [Freeman] is guaranteed the right to counsel of his choice. Otherwise, the right is not meaningful." (Brief of Appellant at p. 14.) While acknowledging that the decision of whether to grant or deny a continuance for the purpose of having a particular counsel represent a defendant is committed to the discretion of the trial court, Freeman argues that the trial court abused its discretion in denying his motion. Freeman does not allege that his appointed counsel was ineffective or that he was prejudiced by the representation provided to him by his appointed counsel.

Freeman misconstrues his sixth amendment right to counsel. The right to coun-

sel does not imply an absolute right to counsel of one's choice. *United States v. Gipson,* 693 F.2d 109, 111 (10th Cir.1982), *cert. denied* 459 U.S. 1216, 103 S.Ct. 1218, 75 L.Ed.2d 455 (1983), citing *United States v. Peister,* 631 F.2d 658, 661 (10th Cir. 1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *United States v. Weninger,* 624 F.2d 163 (10th Cir.1980), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *United States v. Davis,* 604 F.2d 474 (7th Cir.1979).

We hold that the district court did not err in denying Freeman's motion for a continuance so that he could retain counsel of his choice. The district court denied the motion after finding that "we have a serious problem with [the] speedy trial [act]." This was not a difficult case. The motion was not presented to the court until the morning of the trial, at a time when the government and its witnesses were prepared to proceed with the trial. Furthermore, nothing in the record indicates that Freeman's appointed counsel was ineffective or that Freeman was prejudiced by the representation provided him.

WE AFFIRM.