**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANIBAL CRUZ MARTINEZ,

Defendant - Appellant.

No. 98-2090

(D. New Mexico)

(D.C. No. 96-CR-324-All)

**ORDER AND JUDGMENT** *

Before **PORFILIO** , **HOLLOWAY** , and **ANDERSON** , Circuit Judges.

Anibal Cruz Martinez appeals his conviction for possession with intent to

distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841

(b)(1)(A), and 18 U.S.C. § 2.  He argues that he was prejudiced by inadmissible

hearsay when a DEA agent testified that Cruz Martinez matched a description

given the day after his arrest by a confidential informant who had previously

bought drugs at his residence.  The United States contends that the informant's

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

out-of-court statements were not admitted for their truth, but were admitted only to show why Cruz Martinez was taken into custody. We hold that there was no relevant nonhearsay purpose to support admission of the statements, because statements introduced to justify previous investigatory decisions are relevant only if taken for their truth. However, because the confidential informant's statements were already before the jury through the cross-examination of another witness, and in light of the extensive admissible evidence against Cruz Martinez, we conclude that the error was harmless.

## I. BACKGROUND

Anibal Cruz Martinez, a Cuban immigrant, was first indicted in this case on June 6, 1996, for two counts of distribution of less than five grams of a mixture containing cocaine base, one count of possession with intent to distribute 50 grams and more of such a mixture, and one count of forfeiture of currency. The two distribution counts were dismissed prior to trial. At a trial held January 8-9, 1997, in the district court, the jury could not reach a verdict on either of the remaining counts. On February 5, 1997, Cruz Martinez was charged in a superseding indictment with one count of possession with intent to distribute 50 grams and more of a mixture containing cocaine base, one count of maintaining a place for the purpose of distributing and using such a mixture, and one count of

forfeiture of currency. At his second trial, held April 16-18, 1997, the jury could not reach a unanimous verdict on the maintaining charge, but convicted him of possession with intent to distribute as well as the forfeiture charge. He was later sentenced to 151 months' imprisonment. On appeal, he continues to maintain his position at trial, that although cocaine may have been sold at his apartment, he has been misidentified as the seller of those drugs, and that prior to his arrest he had no knowledge of such sales occurring at his residence.

At trial, the government presented evidence that Albuquerque Police Department ("APD") detectives received information regarding drug activity at 3408 Crest, Apartment 3–Cruz Martinez's apartment. Following this lead, the APD conducted two controlled buys at that address via a confidential informant. The first occurred early in May 1996, sometime between 1:00 PM and 3:30 PM. APD Detective Danny Garcia testified that he and APD Detective Troy Gladfelter sent an informant into the apartment with a $20 bill. The informant returned a short time later with a rock of crack cocaine. Garcia did not see anyone inside the apartment. Based on statements by the informant describing the seller as a heavyset, balding Cuban male, a search warrant was issued.

On May 16, 1996, at approximately 1:30 PM, the informant returned to Cruz Martinez's apartment, again entering with a $20 bill and returning with a rock of cocaine base. Detectives Garcia and Gladfelter observed from a distance;

Garcia testified that he did not see who answered the door. The confidential informant gave law enforcement officers descriptions of two persons present at the sale, but never viewed photographs of any suspects and did not testify at trial.

About one hour after the May 16 buy, at approximately 2:30 PM, APD officers executed a search warrant at the residence. Detective Garcia, Detective Gladfelter, and Sergeant Terry Ward each testified concerning the execution of the warrant. Officers arrested the only person present, a heavyset Cuban (not balding) identified as Isaac Gonzales, and found $166 on his person. Officers recovered numerous pieces of physical evidence from the bedroom area, including pill bottles and film vials containing 72.4 grams of cocaine base found on an armoire; a diet scale, also on the armoire; bundles of cash in a dresser drawer and in a vase on the dresser, in amounts of $399, $40, $3000, and $25, including the $20 that had just been used in the drug buy; a fully loaded revolver inside a clothes hamper, with matching bullets in the dresser drawer; and a photograph of Cruz Martinez holding the revolver and a pistol-grip shotgun. Cruz Martinez arrived while the police were conducting their search. He identified himself as the lessee of the apartment, and was arrested.

Cruz Martinez and Gonzales were transported to the police station for questioning. Drug Enforcement Agency ("DEA") Agent Robert Schimoler was in a room with Cruz Martinez when APD Detective Victor Jojola walked by and

-4-

recognized Cruz Martinez. Jojola testified that he pulled Schimoler aside and advised him that he had met Cruz Martinez before. Cruz Martinez, who spoke little English, had come to Jojola, also a Spanish speaker, about one month earlier offering to give information about Cubans selling drugs in his neighborhood. At that time, Jojola determined that Cruz Martinez's information was "true and correct," R. Vol. IV, Tr. at 141, and explained that if Cruz Martinez was willing to be an informant, he would receive compensation for good information. Jojola told Cruz Martinez that informants usually have to testify in court. Cruz Martinez explained that he might not be comfortable testifying against people he knew; Jojola gave Cruz Martinez his pager number and told him to think about it. Jojola testified that he never received any pages from Cruz Martinez.

Jojola testified that after he had advised Schimoler of this prior meeting, Schimoler asked him to stay and interpret. According to Jojola, Cruz Martinez gave "one-word," "vague," "close-ended" answers to questions about the items recovered from his apartment. R. Vol. IV, Tr. at 147, 148. Initially Cruz Martinez denied all knowledge of the drugs. When questioned about the money, Cruz Martinez explained that it was his and his wife's savings from various jobs. Jojola testified that a few minutes later, Cruz Martinez told him that an unidentified Mexican male had come to the door with the drugs, and that Cruz Martinez had tried to page Jojola to tell him about it. When asked about

Gonzales' involvement, Cruz Martinez said, "He doesn't know anything." R. Vol. IV, Tr. at 152.

Agent Schimoler corroborated Jojola's account, and stated that following the interview, "based on my experience and based on the information that was given to me at that time, I decided to take Mr. Cruz Martinez into federal custody and to release Mr. Gonzales." R. Vol. V, Tr. at 200.

On cross-examination, defense counsel challenged aspects of Agent Schimoler's investigation. Agent Schimoler acknowledged that he released Gonzales before running a background check that would have disclosed a prior drug-related arrest, and that in so doing he disregarded APD officers' recommendations that Gonzales be kept in custody. He testified that Cruz Martinez had no criminal record. He testified that he talked to the confidential informant the day after releasing Gonzales, and that the informant gave descriptions of two persons involved in the second buy, one of whom matched Gonzales' description. Also, Schimoler admitted he had never had the one fingerprint recovered from the containers of the drugs checked against Gonzales' print. [1]

---

[1] The prosecution arranged for this analysis in the evening following the first day of trial. Prior to Schimoler's testimony on the second day of trial, the expert testified that the print did not match Gonzales.

On redirect, the prosecutor asked only about the statements of the confidential informant. Specifically, he asked, "The description of the second person there, who was that consistent with?" R. Vol. V, Tr. at 232. Defense counsel objected on hearsay grounds, and there was a discussion at the bench:

| | |
|---|---|
| [Defense counsel]: | [The prosecutor] is going to ask for hearsay evidence at this time. |
| [Prosecutor]: | Your Honor, he opened the door. |
| [Defense counsel]: | To the individual who transferred the actual cocaine; that's the only person I asked about, Your Honor. |
| [Prosecutor]: | But there were two people present, and he asked about what the description was consistent. I'm asking if the description is consistent. It's not necessarily for the truth of the matter asserted, it's to go as to Agent Schimoler's reasons in conducting his investigation as to why certain people were taken into custody. |
| The Court: | I'll permit it not for the truth of the matter asserted, but for explaining why he did what he did. If you want a limiting instruction, I'll give you one. |
| [Defense counsel]: | Yes, if you would, Your Honor. |
| The Court: | Do you want to draft one? |
| [Defense counsel]: | Yes, I will do that. |

R. Vol. V, Tr. at 233. Schimoler then testified that the informant's description of the other person at the second sale "was consistent with the physical appearance

-7-

of Mr. Cruz Martinez." R. Vol. V, Tr. at 234. At this point, no limiting instruction was given; nothing was said in front of the jury indicating that the informant's statements were not to be taken for their truth.

The defense presented three witnesses: Maria Cruillas (a workplace acquaintance of Cruz Martinez's wife), Cruz Martinez's wife, and Cruz Martinez himself. Testifying in his own defense, Cruz Martinez related that on numerous occasions Gonzales had visited the house; Cruz Martinez had befriended Gonzales because they were fellow Cubans and Gonzales was homeless. At 7:00 AM on May 16, Gonzales came to Cruz Martinez's apartment and asked to use the bathroom facilities for personal hygiene, as he had on prior occasions. At that moment Cruz Martinez was leaving to take his wife to work. He let Gonzales stay in the apartment to use the bathroom. After taking his wife to work, he went to the home of Maria Cruillas to take her and her children on a series of errands. He then went to pick up some prescription medication for himself. (This testimony was consistent with the previous testimony of Cruillas regarding the events of May 16, 1996.) He subsequently returned to his residence, where he was arrested.

Cruz Martinez further testified that the cash in the apartment represented his and his wife's savings from various jobs (their combined gross income in 1995 was $16,059), which they kept in a dresser drawer under some clothes. (His

wife previously testified to the same effect.) He stated that the guns in the photo belonged to Gonzales, and that Gonzales took the picture. He denied knowledge of the drugs.

Cruz Martinez testified that at his first meeting with Jojola, in April 1996, he gave Jojola six names of persons selling drugs, three of which had subsequently been arrested. He stated that he called the police several times to report drug dealing in his neighborhood. He tried to page Jojola the morning of his arrest, before leaving the house, regarding drug activity in the area. He denied telling Jojola anything about a Mexican bringing drugs to his apartment.

Before closing arguments, in the court's instructions to the jury, the court stated:

> During the course of this trial I admitted certain testimony for a limited purpose only. Specifically, I admitted the statements of the confidential informant to Agent Schimoler describing the people in the apartment only to explain why the agent took the actions he did. I did not admit these statements for their truth.
> You may consider this testimony only for the specific limited purpose for which it was admitted.

Jury Instruction No. 8, R. Vol. I, Tab 53. During opening and closing arguments neither side referred to the informant's out-of-court statements.

## II. DISCUSSION

## A. Out-of-Court Statements by the Confidential Informant

-9-

Cruz Martinez contends that Agent Schimoler's testimony regarding the confidential informant's description of a person with Cruz Martinez's physical characteristics constitutes inadmissible hearsay. We review the district court's evidentiary rulings for abuse of discretion, considering the record as a whole. United States v. Jones, 44 F.3d 860, 873 (10th Cir. 1995). On hearsay issues, we accord heightened deference to the district court, "because the determination of whether certain evidence is hearsay rests heavily upon the facts of the particular case." United States v. Wilson, 107 F.3d 774, 780 (10th Cir. 1997).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The United States contends on appeal (as it did successfully at trial) that the informant's statements were not offered for their truth, but to "corroborate[] [Agent Schimoler's] earlier decision to take [Cruz Martinez] into custody." Appellee's Br. at 12. It cites United States v. Freeman, 816 F.2d 558 (10th Cir. 1987), for the proposition that out-of-court statements are admissible "to explain the actions of the investigating agent." Appellee's Br. at 12.

In Freeman we held that "out of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken." Id. at 563 (citing United States v. Love, 767 F.2d 1052, 1063-64 (4th Cir. 1985)). Freeman was arrested after Secret Service Agents observed him

and two other people meet for the purpose of distributing counterfeit currency. One of the agents testified that this surveillance was conducted following a confidential informant's tip that the two other people planned to meet with an unknown white male to pass counterfeit money. We upheld the admission of these out-of-court statements "to explain preparations and steps in the Government's investigation of Freeman." Id. at 563.

Similarly, in United States v. Wilson, 107 F.3d 774 (10th Cir. 1997), we upheld the admission of the out-of-court statements by a confidential informant that led police to conduct a controlled buy at the defendant's residence. We reasoned that this evidence "was offered to explain the reason why the government began its investigation of [the defendant's residence]." Id. at 781 (citing Freeman, 816 F.2d at 563-64). And in United States v. Trujillo, 136 F.3d 1388 (10th Cir. 1998), we cited Wilson in holding that an FBI agent's testimony relating witnesses' descriptions of a bank robber was admissible "as evidence of the focus of the FBI's investigation." Trujillo, 136 F.3d at 1396; see also United States v. Barela, 973 F.2d 852, 854-55 (10th Cir. 1992) (holding that out-of-court statements "may come in for a nonprejudicial relevant use, such as demonstrating reasons for taking certain investigatory steps") (citing Freeman, 816 F.2d at 563).

In each of these cases we recognized a relevant nonhearsay use for the contested evidence, because it provided needed background information to

explain events which led to the defendant's arrest. We recognized such a need in

United States v. Cass, 127 F.3d 1218 (10th Cir. 1997):

> In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient.

Cass, 127 F.3d at 1223 (quoting 2 McCormick on Evidence (4th ed.) §249, at 104 (citations omitted)).

The government's asserted nonhearsay use of the statements at issue here is of a different character. Although the informant's statements do provide a post hoc justification for Schimoler's earlier decision to keep Cruz Martinez in custody, such justifications do not provide background information showing why the decision was made in the first place. Contrary to what the prosecutor at trial successfully argued, the statements do not show "why certain people were taken into custody." R. Vol. V, Tr. at 233. Schimoler took Cruz Martinez into federal custody the day before Schimoler talked to the confidential informant. Furthermore, the prosecutor did not seek to establish, Schimoler did not testify, and the government therefore does not argue, that Schimoler's conversation with the confidential informant triggered any subsequent investigatory decisions.

The United States argues on appeal (despite not having made such an argument before the trial court) that the prosecutor on redirect properly elicited

-12-

the challenged statements because they rehabilitated Schimoler as a witness. It is true that on cross-examination defense counsel questioned various of Schimoler's investigatory decisions, and we agree that the statements offered on redirect strengthened Schimoler's credibility somewhat. However, to the extent the informant's statements rehabilitated Agent Schimoler, they were offered for their truth. Nothing Schimoler heard the day <u>after</u> taking Cruz Martinez into custody could justify that decision unless such statements were offered to show that the decision was correct, i.e., that Cruz in fact was guilty. Such use of the out-of-court statements constitutes hearsay.

Even if we could find some marginal nonhearsay relevance to the challenged statements, "[t]he government's identification of a relevant non-hearsay use for such evidence, however, is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice." <u>Cass</u>, 127 F.3d at 1223 (quoting <u>United States v. Forrester</u>, 60 F.3d 52, 59 (2d Cir. 1995) (internal quotation omitted)). Here, as in <u>Cass</u>, "the hearsay problem is exacerbated because the evidence the government presented to 'explain the course of its investigation' . . . go[es] to precisely the issue the government was required to prove . . . . Hearsay evidence that directly goes to guilt is particularly difficult to limit to background purposes." <u>Cass</u>, 127

F.3d at 1223 (citing cases). Although a limiting instruction was given, it was both tardy and insufficient, as we explain below.

Accordingly, we conclude it was error to admit Schimoler's testimony regarding the out-of-court statements.

## B. Confrontation Clause

Cruz Martinez claims that the admission of the informant's out-of-court statements violated his Sixth Amendment right to confront his accusers. Cruz Martinez admits that no such objection was lodged at trial, and concedes that we have held that a hearsay objection at trial is not enough to preserve the constitutional issue. See United States v. Perez, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc). Therefore we review only for plain error. See id.

Plain error must be obvious and affect substantial rights. See id. at 1583. Although we have determined that hearsay was improperly admitted, we do not think the error was particularly obvious, and therefore we reject Cruz Martinez's attempt to cast his argument as a constitutional claim.

## C. Harmless Error

The government contends that any error in admitting hearsay was harmless. Because we conclude that the admission of the hearsay was a nonconstitutional

-14-

error, we apply the harmless error standard set out in Kotteakos v. United States, 328 U.S. 750, 765 (1946). We review the record as a whole, de novo, to determine whether the statements had a "substantial influence" on the outcome or whether they leave us "in grave doubt" as to whether they had such an influence. United States v. Tome, 61 F.3d 1446, 1455 (10th Cir. 1995) (citing Kotteakos). "The question is not whether, omitting the inadmissible statements, the record contains sufficient evidence for a jury to convict the defendant." Tome, 61 F.3d at 1455 (citing Kotteakos).

The government has the burden of proof on this issue. See Tome, 61 F.3d at 1455. In support of its position, the government points to the considerable evidence against Cruz Martinez. It notes that Cruz Martinez's testimony conflicted with this evidence, and concludes that by convicting Cruz Martinez, the jury rejected his account as incredible. It argues that the limiting instruction cured any prejudice. As evidence of the jury's correct application of the instruction, it argues that the challenged statements went directly to the maintaining charge, on which the jury deadlocked.

We first reject the government's contention that the court's limiting instruction "cured any prejudice, real or imagined." Appellee's Br. at 20. In support of this argument it cites only cases involving curative instructions. A curative instruction requires jurors to disregard inadmissible evidence, while a

-15-

limiting instruction orders them to consider admissible evidence only for a limited purpose.  See 21 Wright & Graham, Federal Practice & Procedure § 5066 (1977). Because there was no relevant nonhearsay use to which the statements here could be put, a mere limiting instruction could not cure any prejudice.  Certainly jurors are presumed to follow instructions. See United States v. Easter, 981 F.2d 1549, 1553 (10th Cir. 1992).  However, the court's instruction to the jurors to consider "the statements of the confidential informant to Agent Schimoler describing the people in the apartment only to explain why the agent took the actions he did" could not have aided Cruz Martinez.  If, as the instruction seems to direct, the jury used the statements to justify Agent Schimoler's prior decision, jurors must have taken them for their truth (as we have explained).

Furthermore, even if there were a proper limited use for the challenged statements, a limiting instruction given at the end of trial would have been less than effective.  At that point, jurors could already have relied on the hearsay for its truth while evaluating defense testimony.  Although the failure to give a contemporaneous limiting instruction is not reversible error per se, we have repeatedly stated that "it is preferable to give some cautionary instruction at the time of admission of the proof, with further instructions in the final charge." United States v. Rios, 611 F.2d 1335, 1341 (10th Cir. 1979) (quoting United States v. Krohn, 573 F.2d 1382, 1387 n.5 (10th Cir. 1978)).

-16-

Nevertheless, having reviewed the record in its entirety, we note that the confidential informant's out-of-court statements implicating Cruz Martinez were introduced without any objection or motion to strike during the cross-examination by defense counsel of Officer Gladfelter, the day before Schimoler testified.    See R. Vol. IV, Tr. at 119-20, 122-24. Defense counsel asked Detective Gladfelter whether the first person arrested in Cruz Martinez's apartment was "the person that the confidential informant had told you had sold the drugs." R. Vol. IV, Tr. at 119. Gladfelter testified that according to the descriptions of the informant, Gonzales had physically transferred the cocaine at the second sale, but added that Cruz Martinez took the money at the second sale and was the sole person involved in the first sale. We have in prior cases held that hearsay was harmless where the hearsay evidence was cumulative of other properly admitted evidence.    See, e.g. , United States v. Norman T. , 129 F.3d 1099, 1106 n.3 (10th Cir. 1997);    United States v. Knox , 124 F.3d 1360, 1364 (10th Cir. 1997);    United States v. Cestnik , 36 F.3d 904, 910-11 (10th Cir. 1994). We again do so here, and are, accordingly, unable to conclude that Schimoler's testimony substantially influenced the jury's verdict.

In addition to Gladfelter's testimony regarding Cruz Martinez's presence at both sales, we rely on the overwhelming circumstantial evidence against Cruz Martinez. Specifically, the fact that Cruz Martinez was lessee of the apartment,

and the nature and location of the evidence recovered from his apartment, contradict his claim of ignorance regarding the drug sales consummated there. The government's buy money was found in his bedroom bundled with money that he claimed he earned legally. The drugs were found not on Gonzales' person, but in Cruz Martinez's bedroom on an armoire, along with a scale. A fully loaded revolver was found in Cruz Martinez's clothes hamper, and more bullets were found in his dresser. The recovery of this evidence from such personal locations is inconsistent with his claim that Gonzales, a passerby who came to use the bathroom, was solely responsible for the drug trafficking in the apartment. This is especially persuasive given the fact that a conviction for possession with intent to distribute requires proof of only (1) knowing possession of a controlled substance and (2) intent to distribute, and does not require evidence that the defendant was present at any particular sale, see, e.g. , United States v. Johnson , 57 F.3d 968, 971 (10th Cir. 1995). In short, given Gladfelter's testimony and the strong circumstantial evidence against Cruz Martinez, we think the jury would have convicted him in any event.

Both the government and Cruz Martinez argue that the fact that the jury deadlocked on the maintaining charge cuts in favor of their respective arguments. We do not think this fact is in any way helpful to our decision. Given the disparate elements of the offenses, see Jury Instructions 15 & 20, R. Vol. I, Tab

-18-

53, nothing about the deadlock compels any conclusion as to the effect of the hearsay. Nor is the previous jury's inability to reach a verdict determinative of harmless error here. No two trials are identical. We review only what is squarely before us. Given the cumulative nature of the hearsay evidence here and the strength of the evidence in support of the conviction, we are unable to say that there was reversible error in this trial.

Accordingly, the conviction is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge