**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

FRANCISCO LOPEZ-GARCIA,

      Defendant - Appellant.

No. 98-2252
(D.C. No. CR 97-6-JP)
(District of New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **KELLY** and **LUCERO**, Circuit Judges.

---

This case presents the following questions: (1) whether prior incidents in which a defendant was stopped while transporting illegal aliens are admissible under Fed. R. Evid. 404(b) to demonstrate lack of mistake in a prosecution for harboring illegal aliens;[1] (2) whether out-of-court statements are admissible to

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]We utilize the term "illegal aliens" herein because this term is used in the indictments and judgment. The statute defines "alien" as any person not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3). Section 1324(a)(1)(A)(iii), which appellant violated, prohibits harboring "aliens" who have "entered. . . the United States in

provide evidence of the basis for a subsequent investigation; (3) whether testimony concerning the intended work destination of illegal aliens constitutes hearsay; (4) whether statements concerning alienage and manner of entry into the United States by vehicle passengers are admissible under Fed. R. Evid. 804(b)(3); and (5) whether these passengers' statements are sufficiently reliable to satisfy the requirements of the Confrontation Clause.

Appellant Francisco Lopez-Garcia was convicted of conspiracy to harbor illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(v)(I), and harboring illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii). Appellant operated a "stash house" in Hatch, New Mexico, used to hide Mexican workers who were being smuggled into the United States. Defense counsel suggested in his opening statement that appellant was unaware that the individuals he housed lacked proper documentation. The district court subsequently admitted evidence under Fed. R. Evid. 404(b) showing that on two prior occasions, in October 1995 and July 1996, authorities stopped appellant while he transported illegal aliens, and that on those occasions also, appellant denied knowledge of the individuals' immigration status. The district court admitted testimony from Border Patrol Agent Ken Dalton regarding statements made by appellant's co-conspirator Billie Wade and her passengers during a checkpoint stop. Finally, the district court admitted testimony by co-conspirator

violation of law."

Jose Anival Reyes-Rivera, allegedly relaying statements made to him by illegal aliens.

On appeal, appellant challenges these evidentiary decisions. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**I**

Appellant claims that the district court erroneously admitted evidence of his prior bad acts. We review a district court's admission of evidence under Fed. R. Evid. 404(b) for abuse of discretion. See United States v. Hill, 60 F.3d 672, 676 (10th Cir. 1995). Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." It may be admitted for other purposes, however, such as to prove "intent," "knowledge," or "absence of mistake or accident." Fed. R. Evid. 404(b).

In Hill, 60 F.3d at 676, we identified four factors that must be considered in determining whether admission of evidence under Rule 404(b) was proper: (1) whether the evidence was offered for a proper purpose; (2) whether the evidence was relevant; (3) whether the trial court concluded that the probative value of the evidence outweighed the prejudicial effect; and (4) whether the trial court gave the jury proper limiting instructions.

Applying these factors, we conclude that the district court did not abuse its

discretion when it admitted evidence of the two vehicle stops. Evidence of the

stops was properly offered to rebut appellant's claim that he was unaware that his

house guests lacked proper documentation. This evidence was clearly relevant to

the credibility of appellant's defense. See United States v. Morales-Quinones,

812 F.2d 604, 612 (10th Cir. 1987) (concluding that a defendant's prior

conviction for transporting illegal aliens is admissible under Rule 404(b) to prove

absence of mistake).[2] The district court specifically determined that the probative

value of this evidence outweighed its prejudicial effect, and it twice instructed the

jury as to the proper use of this evidence.[3] Finally, the two stops occurred within

_____

[2]The case of United States v. Temple, 862 F.2d 821 (10th Cir. 1988), does not mandate a contrary conclusion. In Temple, the district court deemed admissible, in a defendant's trial for aiding and abetting the smuggling of illegal aliens, evidence that in 1986 a car registered to the defendant was used to transport illegal aliens and the defendant retrieved a car from an impoundment lot operated by the INS. On appeal, we held that the 1986 evidence was too "thin and remote" for admission under Rule 404(b). Id. at 823. We emphasized the government's failure at trial or on appeal to articulate any theory for the admissibility of the two 1986 incidents. See id. at 823; see also United States v. Biswell, 700 F.2d 1310, 1317 (10th Cir. 1983) (the government must establish the relevance of proffered bad acts evidence). Nor did the district court in Temple explain the basis for admitting this evidence. See Temple, 862 F.2d at 823. Within this context, we concluded that the evidence of the 1986 incidents was more prejudicial than probative. See id. at 824.

In this case, the government demonstrated the pertinence of the October 1995 and July 1996 stops to refute appellant's claim that he was unaware he was housing illegal aliens. In addition, the district court made thorough and well-reasoned findings that the probative value of these stops outweighed their prejudicial effect. Accordingly, Temple does not bar admission of this evidence.

[3]We also reject appellant's argument that the district court elevated its alleged error to the status of reversible error by referring to these incidents as "evidence of prior questionable conduct by the defendant" in the jury instructions. We agree with appellees

-4-

one year of the offense with which appellant is charged. See Morales-Quinones, 812 F.2d at 612 (noting relevance of proximity in time to admissibility of prior acts under Rule 404(b)). We discern no abuse of discretion.

Nor did the district court abuse its discretion by allowing the government to present this evidence during its case in chief. Where, as here, defense counsel indicates during opening argument the intention to use a lack of knowledge defense, the district court may allow the government to introduce Rule 404(b) evidence during its case in chief. See Morales-Quinones, 812 F.2d at 611-12.

**II**

We turn to appellant's hearsay claims. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c). Statements are not hearsay if they are offered for some purpose other than their truth. See id. When reviewing a district court's decision to admit alleged hearsay evidence, we review for abuse of discretion and accord heightened deference to the district court, "because the determination of whether certain evidence is hearsay rests heavily upon the facts of the particular case." United States v. Wilson, 107 F.3d 774, 780 (10th Cir. 1997).

---

that, if anything, "questionable conduct" is less prejudicial language than "bad acts," and the court's oral instruction, viewed in the context of the jury instructions as a whole, did not unfairly prejudice appellant or inaccurately instruct the jurors. See United States v. Winchell, 129 F.3d 1093, 1096 (10th Cir. 1997).

## A

Appellant asserts the district court erred when it admitted testimony by Border Patrol Agent Ken Dalton recounting conflicting statements made by Billie Wade and her passengers regarding their destination. "[O]ut of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken." Wilson, 107 F.3d at 780-81 (quoting United States v. Freeman, 816 F.2d 558, 563 (10th Cir. 1987)). The conflicting statements at issue here roused the suspicion of authorities and prompted them to monitor the movement of Wade's vehicle. These efforts ultimately led to the arrest of appellant's co-conspirator Jose Anival Reyes-Rivera, who testified on behalf of the prosecution at appellant's trial. Given that the statements of Wade and her passengers were clearly relevant to show why authorities undertook their investigation, see Freeman, 816 F.2d at 563, we discern no abuse of discretion in the district court's decision to admit the statements into evidence, see Wilson, 107 F.3d at 780-81.

## B

Appellant claims that the district court also erred when it admitted alleged hearsay testimony by Jose Anival Reyes-Rivera regarding "statements made by undocumented aliens as to where the aliens were going to work." Appellant's Br. at 12-13 (citing III R. at 117-18). Our review of the record indicates that Reyes-

Rivera did not actually relay any statements made to him by the undocumented aliens regarding their work plans. Reyes-Rivera explained that he had briefly worked at a T-shirt company where one had gone. He also testified that he took others to a ranch in the Carolinas to pick watermelons. This testimony could have been based on Reyes-Rivera's personal observations, and the record fails to indicate otherwise. Accordingly, we discern no abuse of discretion.

## C

Appellant further argues that the district court erred when it admitted, under Fed. R. Evid. 804(b)(3), testimony by Border Patrol Agent Ramiro Garcia and by James Gimler, the Sheriff's Investigator for Dona Ana County, New Mexico, that passengers at the October 1995 and July 1996 stops admitted their illegal status. Rule 804(b)(3) allows an exception to the general hearsay prohibition for "statements against interest."

To establish the admissibility of a statement against interest, the proponent must show that: (1) the declarant is unavailable; (2) the declarant's statement is sufficiently inculpatory that a reasonable person in declarant's position would not have made it unless he or she believed it to be true; and (3) sufficient corroborating evidence exists to establish the trustworthiness of the statement. See United States v. Porter, 881 F.2d 878, 883 (10th Cir. 1989).

In light of these factors, the district court did not abuse its discretion when

it admitted the challenged testimony. First, the district court reasonably found the declarants, who apparently were returned to Mexico years previously, to be unavailable. See Fed. R. Evid. 804(a)(5). While the prosecution must make a good faith effort to produce a witness before that witness will be deemed unavailable, "[t]he law does not require the doing of a futile act." Ohio v. Roberts, 448 U.S. 56, 74 (1980); see also United States v. Winn, 767 F.2d 527, 530 (9th Cir. 1985) (concluding that illegal aliens previously returned to Mexico were unavailable). Second, because declarants' admission of their status subjected them to criminal liability under 8 U.S.C. § 1325, it is unlikely that these individuals would make such statements unless they were true. Third, the circumstances surrounding these declarations corroborate the reliability of the statements. The declarants were stopped in southern New Mexico, while traveling in vehicles packed with adult men. Agent Garcia specifically indicated that the declarants at the October 1995 stop were returned to Mexico. Appellant himself conceded that his passengers at the July 1996 stop were illegal aliens. The district court committed no abuse of discretion when it admitted the challenged testimony.

## III

Appellant asserts that admission of Agent Garcia's testimony relaying admissions by passengers during the October 1995 stop violated his Sixth

Amendment right to Confrontation.[4]  The Confrontation Clause of the Sixth Amendment dictates that in a criminal prosecution, the accused has a right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "[W]hen deciding whether the admission of a declarant's out-of-court statements violates the Confrontation Clause, [we] independently review whether the government's proffered guarantees of trustworthiness satisfy the demands of the Clause."  Lilly v. Virginia, 119 S.Ct. 1887, 1900 (1999).[5]

**A**

In light of the Supreme Court's conclusion that "accomplices' confessions that inculpate a criminal defendant," see Fed. R. Evid. 804(b)(3), do not fall within a firmly rooted exception to the hearsay rule, Lilly, 119 S.Ct. at 1899, we evaluate the admissibility of declarants' statements with reference to the test set forth in Ohio v. Roberts, 448 U.S. 56, 66 (1980).  Under Roberts, a statement that

---

[4]We address the Confrontation Clause issue separately from our preceding discussion of admissibility under Rule 804(b)(3) because the two standards are not coterminous; a statement can be admissible under the hearsay rule but not the Confrontation Clause.  See California v. Green, 399 U.S. 149, 155-56 (1970).  Moreover, we consider appellant's Confrontation Clause challenge only with respect to the October 1995 stop because this is the stop with respect to which appellant raised a specific Confrontation Clause challenge at trial.  See United States v. Rodriguez-Garcia, 983 F.2d 1563, 1572 (10th Cir. 1993).

[5] To the extent the government argues that declarants' statements are admissible under the exception for statements by co-conspirators, see Fed. R. Evid. 801(d)(2)(E); Bourjaily v. United States, 483 U.S. 171, 183 (1987), we conclude that declarants' statements cannot reasonably be deemed made "in furtherance of" the smuggling conspiracy, and thus do not fall within that exception.

falls outside a firmly rooted exception to the hearsay rule is admissible if it possesses "particularlized guarantees of trustworthiness" such that adversarial testing would add little to the statement's reliability. Id. at 66. In deciding whether a statement has the requisite guarantees of trustworthiness, we consider the following factors set forth in Dutton v. Evans, 400 U.S. 74, 88-89 (1970): (1) whether the statement contains an "express assertion of past fact"; (2) whether the declarant has personal knowledge of the facts asserted; (3) whether there was a possibility of faulty recollection; and (4) whether the circumstances suggest the declarant had a reason to misrepresent the facts asserted. See Bourjaily v. United States, 483 U.S. 171, 183 (1987).

Applying these factors, we conclude that these declarants' statements are sufficiently reliable to comport with Confrontation Clause requirements. While declarants' statements concerning their lack of authorization to be in this country are assertions of fact, they concern matters with respect to which the declarants have personal knowledge. There is little risk that declarants would have faulty recollections of their status. Given the circumstances in which declarants made their statements, declarants are unlikely to have misrepresented their status as illegal aliens. While it is conceivable that these passengers could have been United States citizens or documented immigrants who were engaged in illegal acts and who misrepresented themselves to evade prosecution, we find it highly

unlikely that all seven of these adult male passengers—who, as noted above, were packed into one vehicle that was stopped by a border patrol agent south of Hatch, New Mexico—were engaged in such misrepresentation. Unlike the statement at issue in Lilly, which exculpated the declarant to the exact extent that it inculpated his codefendant, the passengers' statements were not self-evidently exculpatory, and they inculpated appellant only indirectly. See Lilly, 119 S.Ct. at 1898 n.2 (citing Dutton, 400 U.S. at 86-89). Nor is there any indication that declarants' statements were "obtained for the purpose of creating evidence that would be useful at a future trial." Lilly, 119 S.Ct. 1894.

Despite the presumption of unreliability that attaches to accomplice confessions that spread blame, see id. at 1900, these out-of-court statements are sufficiently reliable to comport with the requirements of the Confrontation Clause. See United States v. Winn, 767 F.2d 527 (9th Cir. 1985) (concluding that statements by illegal aliens to border patrol agents concerning the declarants' alienage and manner of entry into the United States were sufficiently trustworthy to be properly admitted against an alleged alien smuggler over his Confrontation Clause objections).

**B**

Even were we to conclude that the admission of these statements violated appellant's right to confrontation, this error would have been harmless beyond a

reasonable doubt given the overwhelming evidence of appellant's guilt. See Harrington v. California, 395 U.S. 250, 254 (1969). The government presented ample, untainted evidence of appellant's guilt. Appellant himself indicated that during a prior videotaped statement, he had admitted that in May 1996, a group of illegal aliens stayed at his house while he was present, and he knew them to be illegal. Appellant also indicated, albeit inconsistently with the above, that in May 1996, after he learned that Luis Hernandez hid illegal aliens at his house, he sought payment for harboring those individuals. Co-conspirator Reyes-Rivera testified that he stopped at appellant's house in May 1996 while transporting approximately nineteen smuggled workers to the eastern United States, that appellant was aware of their status, and that Luis Hernandez routinely hid illegal aliens at appellant's house. Finally, Pedro Acosta-Esquival testified that he, along with other illegal aliens, once stayed at appellant's home for three to four days while trying to reach Florida. Given this evidence of appellant's guilt, we conclude that any injury to appellant's confrontation rights was harmless beyond a reasonable doubt.

     **AFFIRMED.**

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge
