**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

EDELBERTO HERNANDEZ-
BAUTISTA,

      Defendant-Appellant.

No. 05-2386
(D.C. No. CR-05-546 RB)
(New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

Edelberto Hernandez-Bautista appeals his conviction for conspiring to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). We affirm.

On March 6, 2005, dispatch for the United States Border Patrol received a call from a citizen stating that "he suspected somebody had picked up illegal aliens . . . on a highway that is adjacent to his property . . . ," rec., vol. IV at 21, and that two vehicles might be involved. Agent Lee Brawley went to investigate

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and noticed two vehicles traveling north, away from the indicated location, with a space of approximately four to six vehicle-lengths between them. One vehicle was a Ford Mustang, and the other was a Ford Aerostar van. When Agent Brawley made a U-turn to follow the vehicles, the Mustang sped up and separated from the van. Agent Brawley called for backup and stopped the van. The Mustang turned west and was subsequently stopped by Agent Victor Cardoza, who ascertained that the driver was Mr. Hernandez-Bautista.

Agent Brawley approached the van and noticed its rear seats were missing and that numerous people lay in the back, one on top of the other. The driver of the van, Mario Esteves, admitted that he was an undocumented illegal alien, as were the ten people accompanying him in the van. Agent Brawley took Mr. Esteves and his passengers into custody and relayed this information to Agent Cardoza. Agent Cardoza then asked Mr. Hernandez-Bautista if he had been traveling with the van, and Mr. Hernandez-Bautista denied any knowledge of the van, its driver or its passengers. However, he agreed to accompany Agent Cardoza to the Border Patrol station for further questioning.

Mr. Esteves pled guilty and testified as follows at Mr. Hernandez-Bautista's trial. He had arranged to transport the aliens from Mexico to the United States and had asked for Mr. Hernandez-Bautista's assistance in moving them over the border and through the desert. Mr. Hernandez-Bautista arranged for the aliens to stay at one of his homes, showed Mr. Esteves where to pick them

up, and arranged for a third individual to lead them through the desert. Mr. Esteves said he paid Mr. Hernandez-Bautista for his assistance and was following the Mustang when he was pulled over by the Border Patrol agents.

Agent Brawley testified that he examined tire tracks at the location where Mr. Esteves picked up the ten aliens. It had rained during the previous night, and the tracks were clear and distinct. He also investigated tire tracks at Mr. Hernandez-Bautista's residence and "found . . . tracks which, to [him], looked to be similar size and tire pattern of van [sic] that the aliens were in." *Id*. at 34. One reason he believed the tire tracks at the pick-up location and those at Mr. Hernandez-Bautista's residence were made by the same vehicle was the distinctive pattern of the tracks, which derived from the fact that the van did not have identical kinds of tires. On cross-examination, Agent Brawley admitted there was another Ford Aerostar van parked at Mr. Hernandez-Bautista's residence, and he had not taken photographs of the other van's tires.

Border Patrol Agent Angela Malpede testified that Mr. Hernandez-Bautista's cellular phone received a call from Mr. Esteves' cellular phone minutes before agents stopped their vehicles, and that the call lasted longer than eight minutes. In addition, the jury listened to video-taped testimony from two of the illegal aliens apprehended in Mr. Esteves' van. They identified Mr. Hernandez-Bautista as the man who ran the house where they stayed after crossing the border.

The jury returned a guilty verdict. Mr. Hernandez-Bautista contends the district court abused its discretion in 1) permitting the use of hearsay evidence; 2) permitting Agent Brawley to testify regarding the tire tracks; and 3) overruling his objection to Agent Brawley's use of the word "conspired" in his testimony.

Before trial, Mr. Hernandez-Bautista filed a motion in limine seeking to exclude the testimony relating to the tip from the anonymous citizen on the ground that it constituted inadmissible hearsay. He noted that the "Government has not disclosed any information about the concerned citizen other than [the citizen's] statement." Rec., vol. I at tab 42. The government argued the citizen tip did not constitute hearsay because it was not being introduced to prove the truth of the matter asserted but only to show why agents commenced an investigation and subsequently stopped the two vehicles. The district court denied the motion. We review evidentiary rulings by the trial court for abuse of discretion. *See United States v. Cass*, 127 F.3d 1218, 1222 (10th Cir. 1997).

In *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987), we stated that "out of court statements are not hearsay when offered for the limited purpose of explaining why a government investigation was undertaken." The district court did not abuse its discretion in permitting the agents to testify to the contents of the citizen tip because this evidence did nothing more than explain why the agents proceeded to the indicated location and stopped two vehicles. The testimony did not tie Mr. Hernandez-Bautista to the conduct observed by the citizen tipster, and

we are not persuaded it was prejudicial on this record.

To the extent Mr. Hernandez-Bautista claims his right to confront the citizen tipster was denied when the government refused to reveal the tipster's identity, he has failed to show that this information "might be relevant to [his] case and [that] justice would be best served by disclosure." *Id*. at 562. "Mere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure" of an informant's identity. *United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993) (citation and internal quotes omitted). Accordingly, the district court did not abuse its discretion in failing to compel the government to disclose the identity of the tipster.

Next, Mr. Hernandez-Bautista asserts the district court abused its discretion when it denied his motion in limine seeking to bar Agent Brawley "from testifying regarding tire tracks or patterns," arguing he was not qualified to provide such testimony. Rec., vol. I at tab 45. At trial, the government contended Agent Brawley would not testify as an expert but would only provide a lay opinion based on his observations. The district court held:

> [i]f the agent establishes a foundation that he looked at these particular tire tracks, made observations about them, the patterns that they presented, and that he saw a similar pattern produced by a tire on the vehicle that [Mr. Esteves] had been driving, I don't think you have to be an expert to say – to testify about consecutive observations and any determination you made about them. It is subject to cross examination. And he didn't take any pictures and, I mean, you may be able to do some damage there, but I don't believe you have to be qualified as an expert to say, 'I made two

observations and they look the same to me . . .'  I simply don't think expert qualification is necessary to do just that.

Rec., vol. III at 20-21.

In support of his claim on appeal, Mr. Hernandez-Bautista points to several cases in various circuits involving tire tread testimony rendered by experts.  *See United States v. Ross*, 263 F.3d 844, 846 (8th Cir. 2001); *Gonzales v. McKune*, 247 F.3d 1066, 1070 (10th Cir. 2001); *United States v. Johnson*, 219 F.3d 349, 358 (4th Cir. 2000); *United States v. Hughes*, 211 F.3d 676, 687 (1st Cir. 2000); *United States v. Parrott*, 434 F.2d 294, 296 (10th Cir. 1970); *Bartlett v. United States*, 232 F.2d 135, 141 (5th Cir. 1956).  None of these opinions, however, stands for the proposition that a witness not certified as an expert is barred from testifying as to his observations regarding tire tracks and tire tread patterns.

Federal Rule of Evidence 701 states that when a

witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Mr. Hernandez-Bautista does not claim that Agent Brawley's testimony exceeded any of these enumerated limitations.  Instead, he merely states that Agent Brawley is not an expert and that his "testimony was not rationally based and not helpful, and was prejudicial . . ."  Aplt. Br. at 35.

The government never sought to introduce Agent Brawley's testimony as that of an expert. As long as his testimony remained within the limitations of Rule 701, the trial court did not abuse its discretion in permitting him to testify to his observations regarding the tire tracks. Mr. Hernandez-Bautista did not establish that Agent Brawley's testimony involved scientific, technical or other specialized knowledge barring its admission under Rule 701. Accordingly, the district court did not abuse its discretion in denying the motion in limine.

Even were we to conclude the district court erred in permitting Agent Brawley to testify on the tire track evidence, we would hold the error to be harmless in light of other evidence introduced at trial, namely Mr. Esteves' testimony regarding the agreements and arrangements he had made with Mr. Hernandez-Bautista. *See United States v. Dulcio*, 441 F.3d 1269, 1275 (11th Cir. 2006) (applying harmless error review to challenges involving the erroneous admission of lay opinion testimony).

Finally, Mr. Hernandez-Bautista claims Agent Brawley's use of the word "conspired" in his testimony constituted an improper legal conclusion and the district court abused its discretion in overruling Mr. Hernandez-Bautista's objection. The testimony Mr. Hernandez-Bautista challenges was elicited in response to the prosecutor's questioning of Agent Brawley regarding what transpired when he asked Mr. Esteves about Mr. Hernandez-Bautista. Agent Brawley testified that Mr. Esteves

admitted that he . . . had known [Mr. Hernandez-Bautista] for several years; that he was actually working for him – or working with him . . . . He made arrangements in Mexico with him to help transport these people – or guide these people in the United States, and that they conspired together to move these aliens . . ."

Rec., vol. IV at 26. The district court overruled the objection to this testimony, stating it did not "believe [Agent Brawley] to be stating a legal conclusion." *Id.* at 27. We agree. Agent Brawley clearly used the term as a synonym for "agreed" and not as a legal term of art. Moreover, unlike one of the opinions cited by Mr. Hernandez-Bautista, *United States v. Espino*, 32 F.3d 253, 257 (7th Cir. 1994), Agent Brawley's use of the word "conspired" was not purposefully elicited by the government to improperly influence or confuse the jury. The district court did not abuse its discretion when it overruled the objection.

For the aforementioned reasons, we **AFFIRM** Mr. Hernandez-Bautista's conviction.

ENTERED FOR THE COURT


Stephanie K. Seymour
Circuit Judge